Sol Wachtler, J.
In this personal injury action, the jury has awarded the infant plaintiff $250,000 for severe injuries sustained by him while attending a high school in the defendant School District. The defendants contend that the verdict is excessive and ask for a reduction of the award or, in the alternative, for a new trial. In addition, it urges that the verdict cannot stand in the face of a verified complaint which demands only $50,000 in compensatory damages. The plaintiff, on the other hand, moves for leave to amend the complaint so that it will reflect the verdict of the jury. The issues thus raised will be considered in inverse order.
It is an established rule of law that a plaintiff may not recover money damages in excess of the amount demanded in the complaint. There are a myriad of cases, both ancient and recent, to this effect. (Michalowski v. Ey, 7 N Y 2d 71, 75; Corning v. Corning, 6 N. Y. 96, 105; Barbato v. Vollmer, 273 App. Div. 169, 172; Rosenzweig v. Wecksler, 237 App. Div. 65, 67; Silbert v. Silbert, 22 A D 2d 893; Natale v. Pepsi-Cola Co. 7 A D 2d 282.)
However, a question arises as to whether or not this rule for all time should be without exception. There was a time during the ancient practice when a plaintiff was required to correctly name his theory in pleading a form of action — a time when a great distinction was drawn as between the courts of law and equity. Indeed, there was a time when the form of the law commanded the attention of the courts as profoundly as did the substance. The evolution of recent decisions and legislation has been away from rigid compliance with certain of these elements and toward the ideals of justice which allow a party to obtain the relief supported by the facts.
In the interest of obtaining justice, the State of New York enacted various sections of the CPLR including 3017 which permits the court to “ grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded ’ ’. Despite this seeming latitude which would appear to give the court discretionary power to allow an award in excess of the ad damnum clause as “ relief * * * appropriate to the *177 proof ’ ’, recent decisions seem to continue the rule which holds to the contrary. (Garden Hill Estates v. Bernstein, 24 A D 2d 512; Silbert v. Silbert, supra;) However, a contrary interpretation of CPLB 3017 allowing for a verdict in excess of the ad damnum clause was found by the United States Court of Appeals, 2nd Circuit, in the case of Riggs, Ferris & Geer v. Lillibridge (316 F. 2d 60).
The matter might well end here were it not for two considerations which prompt the court to examine this question in some greater depth. The first is the total absence of prejudice to the defendants in the event that amendment of the complaint is permitted. The second is the fact that we are here concerned with the rights of an infant, to whom courts have ever owed a special fidelity and guardianship (Glogowski v. Rapson, 20 Misc 2d 96; Chikara v. City of New York, 21 Misc 2d 446).
The plaintiff’s complaint, verified by his father as guardian ad litem when the infant was 14 years of age, alleges serious personal injuries and prays for damages in the total sum of $50,000. Timely notice of claim was served on the defendants and the defendants have answered and defended against the action. The record of the trial, the medical testimony, the nature and permanency of plaintiff’s injuries and the jury’s verdict all combine to make it manifestly clear that the prayer for damages was undoubtedly and unreasonably low. All that could be done at the trial, however, was done, both by plaintiff’s and defendants’ counsel. The action was vigorously prosecuted and effectively defended. Upon what grounds, then, is the court to say that the infant plaintiff must be bound by the prayer of the complaint.
■ If the defendants were able to show prejudice, that would be a sufficient ground. At a minimum, defendant would be entitled to its request for a new trial. But there is no prejudice and the defendants have been unable to establish the contrary. A new trial would be an exercise in futility; perhaps worse, it would seriously prejudice the plaintiff who has already established the defendants’ liability.
If the ad damnum clause had asked for greater damages — or if a new trial were now granted, there would be nothing that the defendant could now do that it has not already done. In short, whether the damages demanded by the complaint were $50,000 or $250,000, the trial would, in fact, have progressed and terminated precisely as it did. Why, then, should the infant plaintiff suffer prejudice at the hahds of his guardian ad litem and counsel when prejudice for all parties can be effectively avoided?
*178 It is urged that the ad damnum clause apprises a defendant of the outer limits of liability and thus affords him the opportunity to make certain critical decisions. We are not told what those decisions are, but we may presume two: he must decide whether to appear or whether to default and, if liability alleged exceeds insurance coverage afforded, he must decide whether to retain counsel to protect him against the potential of excess liability. Neither of these situations is present here. If the defendant has defaulted, there would, of course, have been no trial and the defendant’s liability would then clearly be limited by the demand made in the complaint (CPLR 3215). Having appeared, however, this alleged ground of prejudice disappears entirely, for the defendant has now undertaken to defend the case on its merits and the trial will proceed in the identical manner whatever the money demand of the complaint may be. As to the second point, it is sufficient to note that no question of protection against excess liability is presented in this case.
In a supplemental affidavit, the defendants raise the point that ' the notice of claim filed with the defendant School District was limited to the same amount as stated in the ad damnum clause. The reasoning set forth herein is also applicable in answering this defect in procedure. The purpose of section 50-e of the General Municipal Law is to make the School Board cognizant of the nature of the claim (Teresta v. City of New York, 304 N. Y. 440; Montana v. Incorporated Vil. of Lynbrook, 23 A D 2d 585).
The cases are legion to the effect that the rights of an infant cannot be lost through the negligence, mistake or inadvertence of the infant’s guardian ad litem or his attorney (Honadle v. Stafford, 265 N. Y. 354; Wannemacher v. Tynan, 144 N. Y. S. 2d 2; Glogowski v. Rapson, 20 Misc 2d 96, supra; Chikara v. City of New York, 21 Misc 2d 446, supra). In the Honadle ease, the Court of Appeals made it clear that1 ‘ Too much care cannot be exercised by trial judges to see that the infant wards of the court are protected as far as possible ” (p. 357). Indeed, it is clear that an attorney for an infant plaintiff has no greater authority to compromise, settle or discharge an infant’s cause of action than does the infant’s guardian ad litem (Greenburg v. New York Cent. & Hudson Riv. R.R.Co., 210 N. Y. 505) and that both are without power to act absent the court’s approval and consent (CPLR 1207,1208). The general rule is well stated in Corpus Juris Secundum (Vol. 43, Infants, § 105) “It is the right and duty of the court to protect the rights and interests of an infant party, plaintiff or defendant, to a litigation, whether or not the proper relief is asked in the pleadings or the claim or *179 defense is properly pleaded.” Thus, the courts have released an infant from the burden of another’s failure to file a timely notice of claim against a municipality. ‘ ‘ Any other construction ” the Appellate Division has said, “is repugnant to the view that an infant is a ward of the court, and to the principle that the rights of an immature infant shall not be forfeited because of the failure of some other party to act ” (Biancoviso v. City of New York, 285 App. Div. 320, 325 and cases cited). The same relief, it will be noted, was not granted on behalf of the adult plaintiff. Equally, we have directed the compromise and settlement of an infant’s claim where it appeared from the facts that the infant’s guardian ad litem was unreasonable and arbitrary in resisting the settlement offer (Glogowski v. Rapson, 20 Misc 2d 96, supra). The guiding principle is clear: an infant always remains a ward of the court throughout the settlement, compromise or trial of a cause (see Wannemacher v. Tynan, 144 N. Y. S. 2d 2, supra) and the court should, indeed must, see to it that the infant’s rights are protected to the fullest extent possible, particularly where, as here, the same can be accomplished without prejudicing the rights of other interested parties. The court thus concludes that, upon the facts in this case, the infant plaintiff’s recovery should not be limited by the amount demanded in the ad damnum clause of the complaint.
Turning now to the second point raised, the defendant urges that the jury’s verdict was excessive and not sustained by the evidence.
The accident in question occurred on January 30, 1963, while the infant plaintiff was attending a gymnasium class in a high school maintained by the defendant School District. According to the testimony, the infant plaintiff, with little or no instruction in the use of a trampoline, was directed by his instructor to perform a forward flip to a seat drop. This maneuver is described by an expert witness as “an advanced movement ”. It appears further that when the plaintiff denied his ability to perform the maneuver and expressed reluctance to attempt it, he was told that his alternative would be to accept a failing grade for the course. In thus attempting the forward flip, the plaintiff came down off balance, thereby bringing his knee into severe contact with his nose.
As a direct result of the accident, plaintiff suffered a com-minuted fracture of the nose as well as a deviated nasal septum. Surgical procedures thereafter employed required that the plaintiff’s nose be packed and that the nose remain in a cast for a period of three months. At present, the only physical premanency which seems to exist in connection with the nose is the *180 deviated septum, together with an obstruction which causes difficulty in breathing and a frequent nasal discharge. The doctor who testified recommended that this be corrected at a future date by additional surgery.
By far, the. most substantial injury sustained by the plaintiff as a result of the accident involves brain damage. One of the medical experts, a psychiatrist and neurologist, testified that the force of the trauma occasioned by the accident resulted in a contusion of the brain. This injury has manifested itself, in addition to a positive finding on an electroeneephlagram, by severe recurring headaches and a persistent drowsiness referred to as narcolepsy. This latter condition further manifests itself by rendering the plaintiff extremely difficult to awaken once asleep and makes it essential that his father administer an amphetamine pill at 4 o’clock every morning so that the infant plaintiff can be aroused from his sleep at 8 o’clock.
Evidence adduced during the trial bears out the plaintiff’s complaint of severe headaches. A former employer of the plaintiff described these headaches or “ spells ” as frequently recurring and of such severity as to render the plaintiff helpless for between one and three days at a time. The evidence also tended to show that these headaches and other sequelae adversely affected the plaintiff’s studies, his school attendance, and his personality.
A medical witness testified that a recent electroeneephlagram showed some degree of improvement but continued to show brain abnormality with evidence of contusion of the brain’s outer layer and symptoms pointing toward deeper structural involvement. The doctor testified further that the condition of headaches and sleepiness, as well as the brain injury, are and will be of a permanent nature.
Subject to the limitation that damages may not be clearly excessive and that they may not flow from passion, prejudice or malice, the extent of damages for personal injuries sustained is an issue to be determined by the sound discretion of the jury. No criteria better than “ sound discretion ” “ reasonable ” and “fairness ” have yet been devised. Guidelines must be derived from human experience. How else can one determine fair compensation for a lifetime of recurring and incapacitating headaches or for the necessity of constantly taking drugs to relieve persistent nacrolepsy. There is neither evidence nor reason to believe that the jury was motivated by passion, prejudice or malice and there is no question but that a substantial verdict was both justified and warranted.
*181 Nonetheless, this court believes that the jury must necessarily have been overwhelmed by pity and sympathy for this young and seriously injured plaintiff. The amount of the verdict is patently excessive.
Fairness requires that recognition be afforded certain basic facts regarding the present condition of the infant plaintiff and his prospects for the future. The evidence indicates that the injuries sustained cause the plaintiff difficulty in retaining a job. Still, he is presently employed. There is no question that his pain is severe and incapacitating. Still, it is not constant. There is no question regarding the plaintiff’s nacroleptic condition. Still, there is a medical remedy.
The court has had an opportunity to observe the infant plaintiff during the course of the entire trial. He is normal in appearance and demeanor. Having these factors in mind the motion to set aside the verdict in the sum of $250,000 is granted, and the case is remanded to the head of the calendar of Trial Term Part I of this court on September 9, 1968 for retrial, subject to such calendar disposition as the Justice presiding may determine; unless the plaintiff stipulates and agrees within 10 days after the entry of an appropriate order herein to the reduction of the verdict to the sum of $125,000, in which event the motion is denied.